# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

February 19, 2008

VIA ELECTRONIC FILING

The Honorable Sue L. Robinson
United States District Court
844 North King Street
Wilmington, DE 19801

**REDACTED**
**PUBLIC VERSION**

Re: *Riverbed Technology Inc. v. Quantum Corporation, et al.,*
C.A. No. 08-016-SLR

Dear Judge Robinson:

     We represent the defendants in the above action. On February 14, 2008, defendants filed a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue, or in the alternative, to transfer (D.I. 12) with supporting opening brief (D.I. 13) and supporting declarations (D.I. 14, 15). We subsequently discovered that Exhibit H to the sealed Declaration of Mauricio A. Flores in Support of Defendants' Motion to Dismiss (the "Flores Declaration") (D.I. 14) was missing page 2. We therefore enclose a new, complete copy of Exhibit H to the Flores Declaration (which should remain under seal). We apologize for any inconvenience and are available should the Court have any questions or concerns.

Respectfully,

*/s/ Tiffany Geyer Lydon*

Tiffany Geyer Lydon (I.D. #3950)

Enclosure
188349.1
cc:    Jeffrey L. Moyer, Esquire (via electronic mail w/encl.)
       Claude M. Stern, Esquire (via electronic mail w/encl.)
       Amar L. Thakur, Esquire (via electronic mail w/encl.)

# EXHIBIT H

# TECHNOLOGY AND TRADEMARK LICEEEMENT

This Agreement ("Agreement") is made effective as of August 22, 2006 ("Effective Date") by and between Rocksoft Pty Limited (ABN 47 008 280 153), a company registered in South Australia and incorporated under the laws of Australia, with its registered office at Level 4, Deutsche Bank Place, Corner Hunter and Phillip Streets, Sydney, New South Wales 2000, Australia ("Licensor") and Quantum Corporation ("Licensee"), a Delaware corporation with offices at 1650 Technology Drive, Suite 700, San Jose, CA 95110, U.S.A.

## RECITALS

WHEREAS, the Licensor owns the rights in respect of the Licensed Marketing Intangibles and the Licensed Technology, including, without limitation, US Patent No 5,990,810 ("the '810 patent"), which concerns a method for data processing and storage.

WHEREAS, the inventor assigned his rights in the '810 patent to Trustus Pty Limited, which in turn assigned all its rights to the Licensor, a wholly-owned a subsidiary of ACN 120 786 012 Pty Ltd.

WHEREAS, ACN 120 786 012 Pty Ltd and the Licensee entered into the Technology and Trademark License Agreement ("License Agreement") on or about 13 August 2007 (expressed to be effective as of 22 August 2006), to grant a perpetual exclusive world-wide license in respect of the Licensed Marketing Intangibles and the Licensed Technology, which included the '810 patent.

WHEREAS, the United States District Court for the Northern District of California in proceedings number C07-04161 WHA between the Licensee and Riverbed Technology, Inc., found in its reasons for granting Riverbed's Motion to Dismiss, dated February 4 2008 (by US District Judge William Alsup) that the License Agreement was ineffective to transfer rights in the '810 patent.

WHEREAS, the parties acknowledge that notwithstanding the findings of US District Judge William Alsup, to the extent the License Agreement was effective to transfer any relevant rights, they wish to terminate the License Agreement with effect from February 11, 2008 (the "Effective Termination Date").

WHEREAS, in accordance with Article 8.1 of the License Agreement, by mutual agreement between ACN 120 786 012 Pty Ltd and the Licensee under the Termination of Technology and Trademark Licensing Agreement, those parties agreed that the License Agreement shall terminate with effect from the Effective Termination Date.

WHEREAS, the parties now wish to enter into an effective licensing arrangement in respect of the rights in the '810 patent in favour of the Licensee.

WHEREAS, Licensor warrants that it owns the Licensed Technology and Licensed

Marketing Intangibles defined herein.

WHEREAS, Licensor desires to grant and Licensee desires to acquire a perpetual exclusive worldwide license with the right to sublicense to the Licensed Technology and the Licensed Marketing Intangibles and whereas Licensee agrees to compensate Licensor for this license on the terms and conditions set forth herein.

WHEREAS, the rights licensed under this Agreement include all rights and benefits relating to the Licensed Technology including, without limitation, the right of the Licensee to bring action and claim relief in respect of any infringement or unauthorised use of the Licensed Technology whether occurring before, on, or after, the date of this Agreement.

NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants and conditions set forth herein, the parties agree as follows:

ARTICLE 1 – DEFINITIONS

1.1 "Licensed Marketing Intangibles" means any trademarks, service marks, trade names, brand names, copyrights, designs, logos, symbols, customer lists, packaging and similar property in existence on the Effective Date, or thereafter, that Licensor owns or licenses. Licensee acknowledges that the nature and quality of the goods or services sold under this Agreement are subject to the control of the Licensor. Licensee agrees to comply with all quality control provisions provided by Licensor.

1.2 "Licensed Technology" means all patents, patent applications, proprietary rights, intellectual property rights, inventions, copyrights, computer programs, mask works, software, source code, enhancements, updates, translations, adaptations, secret and confidential information, data, specifications, designs, process technology, know-how and other intangible property (whether or not patentable or copyrightable) in existence on the Effective Date, or thereafter, that Licensor owns or licenses including, without limitation, United States Patent No 5,990,810 and any other letters patent that might be granted for the invention in respect of that patent in the United States and throughout the world.

ARTICLE 2 – GRANT OF TECHNOLOGY LICENSE

2.1 Subject to the terms and conditions in this Agreement, Licensor hereby grants to Licensee,

and Licensee hereby accepts, a perpetual, exclusive, world-wide, transferable license with the right to sublicense or assign all or any part of Licensor's rights under the Licensed Technology, including without limitation, the right to manufacture, make, have made, use, import, export, sell and service products that incorporate the Licensed Technology.

2.2 Subject to the terms and conditions in this Agreement, Licensor hereby grants to Licensee, and Licensee hereby accepts, a perpetual, exclusive, world-wide, transferable license with the right to sublicense or assign all or any part of Licensor's rights under the Licensed Marketing Intangibles, including without limitation, the right to reproduce, distribute, and use the Licensed Marketing Intangibles.

2.3 The license granted by this Agreement extends to the Licensee's use of the Licensed Marketing Intangibles and the Licensed Technology in existence on the Effective Date throughout the life of the Licensed Technology, regardless of when such use occurred.

ARTICLE 3 – CONSIDERATION

3.1 <u>Royalty Payments.</u> In consideration for the rights granted to Licensee hereunder, Licensee shall pay to Licensor royalty payments in an amount to be determined by the parties based on an arms-length report to be agreed upon by the parties which amount shall be, if not agreed otherwise, the amount most recently paid under the now terminated License Agreement. Royalty payments shall be made in U.S. dollars and shall be made quarterly or when requested.

ARTICLE 4 – DELIVERY OF TECHNOLOGY

4.1 During the term of this Agreement, Licensor shall, when requested by Licensee, deliver to Licensee, or grant Licensee access to, the Licensed Technology for its or Licensee's designated third party's use.

ARTICLE 5 – LICENSOR'S & LICENSEE'S REPRESENTATIONS AND WARRANTIES

5.1 Licensor represents and warrants to Licensee that as of the date of delivery, the Licensed Technology made available to the Licensee hereunder will be the complete and current version. Licensor represents and warrants that U.S. Patent No. 5,990,810 and all other Licensed Technology is in force.

5.2 <u>Indemnification for Infringement.</u> Licensor shall defend, indemnify and hold Licensee harmless against any and all claims, demands, suits, proceedings, losses, liabilities, damages, costs and expenses (including reasonable attorneys' fees) (collectively "Liabilities") which are attributable to any allegation that the Licensed Technology infringes any other person's, firm's or entity's patent, copyright, trademark, trade secret or other proprietary right. Licensor shall pay any costs and damages awarded against Licensee that are attributable to any such claim. Licensee will promptly notify Licensor of any claims, indications or objections that the use of the Licensed Technology may or will infringe the intellectual property or proprietary rights of any third party.

5.3 The Licensor represents and warrants to the Licensee that:

(a) it is a body corporate validly existing under the laws of its place of incorporation or establishment;

(b) it has the corporate power to enter into and perform its obligations under this Agreement and to carry out the transactions contemplated by this Agreement;

(c) it has taken all necessary corporate action to authorise the entry into and performance of this Agreement and to carry out the transactions contemplated by this Agreement; and

(d) this Agreement is a valid and binding obligation in accordance with its terms and conditions.

5.4 The Licensee represents and warrants to the Licensor that:

(a) it is a body corporate validly existing under the laws of its place of incorporation or establishment;

(b) it has the corporate power to enter into and perform its obligations under this Agreement and to carry out the transactions contemplated by this Agreement;

(c) it has taken all necessary corporate action to authorise the entry into and performance of this Agreement and to carry out the transactions contemplated by this Agreement; and

(d) this Agreement is a valid and binding obligation in accordance with its terms and conditions.

ARTICLE 6 – CONFIDENTIAL INFORMATION

6.1 Licensor and Licensee agree that the provisions of this Agreement shall be maintained in confidence and shall not be disclosed to any third party absent written consent from the non-disclosing party to this Agreement.

ARTICLE 7 - INTELLECTUAL PROPERTY RIGHTS

7.1 <u>Ownership</u>. Licensor warrants that Licensor is, and shall remain, the exclusive owner of all rights, title and interest in and to, or the authorized licensee from a third party of, the Licensed Technology and the Licensed Marketing Intangibles. Licensee shall acquire no rights whatsoever in or to any of the Licensed Technology and the Licensed Marketing Intangibles, except as specifically provided for in this Agreement.

7.2 <u>Maintenance and Protection of Intellectual Property Rights</u>. Licensee has the exclusive right to preserve the validity and enforceability of all rights, title and interest in and to the Licensed Marketing Intangibles and the Licensed Technology, including, without limitation, the right to sue for infringement occurring in the future, past or present, at Licensee's sole discretion. The Licensee may retain the benefit of any damages or other relief that may arise from such proceedings brought by the Licensee. Licensor shall provide Licensee with such assistance as Licensee shall reasonably request in connection with preserving such validity and enforceability. Licensor agrees that it shall promptly notify Licensee of any and all infringements, imitations, illegal use, or misuse by any person, firm or entity of the Licensed Marketing Intangibles and the Licensed Technology which come to its attention. Licensor shall promptly notify Licensee in writing of all maintenance fee due dates, renewal due dates, and other statutory or regulatory deadlines for taking steps that may preserve or enhance the intellectual property rights licensed hereunder.

ARTICLE 8 - DURATION AND TERMINATION

8.1 The term of this Agreement shall commence on the date first written above and shall remain in force and effect in perpetuity unless terminated: (a) by mutual agreement between the parties hereto, or (b) or in accordance with the provisions of this Article.

8.2 Licensee, in its sole discretion, may terminate this Agreement for any reason at any time by giving thirty (30) days prior written notice to Licensor. Licensee may terminate the entire agreement, or the agreement only as to specified Licensed Technology and/or Licensed Marketing Intangibles.

ARTICLE 9 – EFFECT OF TERMINATION

9.1 Upon termination of this Agreement, Licensee or Licensee's designated third parties shall have the right to liquidate its existing inventory of product incorporating the Licensed Technology.

9.2 The provisions of Articles 1, 5 – 7 and 9 – 13 survive termination.

ARTICLE 10 - COMPLIANCE WITH LAWS

10.1 General Compliance. Each party shall at all times and at its own expense (1) strictly comply with all applicable laws, rules, regulations and governmental orders, now or hereafter in effect, relating to its performance of this Agreement; (2) pay all fees and other charges required by such laws, rules, regulations and orders; and (3) maintain in full force and effect all licenses, permits, authorizations, registrations and qualifications from all applicable governmental departments and agencies to the extent necessary to perform its obligations hereunder.

10.2 U.S. Export Controls. Without limiting the generality of Article 10.1 hereof, Licensee specifically acknowledges that certain of the Licensed Technology ("Technical Data") is subject to United States export controls, pursuant to the Export Administration Regulations, 15 C.F.R. Parts 768-799. The parties shall comply strictly with all requirements of the Export Administration Regulations with respect to all such Technical Data. Without limiting the generality of the foregoing obligation, the parties hereby expressly agrees that without the prior written authorization of the United States Commerce Department, the parties will not, and will cause their respective representatives to agree not to (a) export, reexport, divert or transfer any such Technical Data, or any direct product thereof, to any destination, company, or person prohibited by the Export Administration Regulations, including the Table of Denial Orders, or (b) disclose any such Technical Data to any national of any country when such disclosure is prohibited by the Export Administration Regulations.

ARTICLE 11 – ASSIGNMENT

11.1 Licensee may assign, delegate or transfer all or any part of its rights or obligations under this Agreement at its sole discretion and without obtaining Licensor's prior consent.

11.2 This Agreement shall inure to the benefit of, and be binding upon, each of the parties, their successors and permitted assignees, delegates or transferees.

ARTICLE 12 – GOVERNING LAW AND DISPUTE RESOLUTION

12.1 Choice of Law. This Agreement is governed by the laws of New South Wales. Each party submits to the jurisdiction of the courts exercising jurisdiction there, and waives any right to claim that those courts are an inconvenient forum.

12.2 Legal Expenses. Subject to any order of a court, the prevailing party in any legal proceeding brought by one party against the other arising out of this Agreement shall be entitled to recover its legal expenses, including court costs and reasonable attorney's fees.

ARTICLE 13 – GENERAL PROVISIONS

13.1 No Waivers. The failure of either party to assert any of its rights under this Agreement shall not be deemed to constitute a waiver of that party's right thereafter to enforce every other provision of this Agreement in accordance with its terms.

13.2 Entire Agreement. This Agreement, including any schedules attached hereto, constitutes the entire agreement of the parties concerning the use of the Licensed Technology and supersedes all prior agreements, understandings and communications, whether written or oral, between the parties with respect to the subject matter hereof. No modification or amendment of this Agreement shall be effective unless in writing and executed by a duly authorized representative of each party. The parties agree to cooperate to supplement, modify, and amend the understandings in this Agreement if circumstances make it appropriate to do so.

13.3 Force Majeure. Notwithstanding anything in this Agreement to the contrary, neither party shall be liable to the other party for any failure to perform or delay in the performance of any obligation hereunder, other than an obligation to pay money, when such failure to perform or delay in performance is caused by an event of force majeure: provided, however, that the party whose performance is prevented or delayed by such event of force majeure shall give prompt notice thereof to the other party. For purposes of this Article, the term "force majeure" shall include war, rebellion, civil disturbance, earthquake, fire, flood, strike, lockout, labor unrest, acts of governmental authorities, shortage of materials, acts of God, acts of the public enemy and, in general, any other causes or conditions beyond the reasonable control of the parties.

13.4 Notices. All notices and communications required to be given under this Agreement shall be sent to the respective parties as follows:

    a. If to Licensee:

        Quantum Corporation

1650 Technology Drive,
Suite 700
San Jose, CA 95110
Facsimile: (408) 944-6581
Attention: General Counsel

b. If to Licensor:

Rocksoft Pty Limited
Level 7, Shell House
170 North Terrace
Adelaide
South Australia 5000
Facsimile: + 61 7 3853 9401
Attention: Finance Manager

13.5 Notices shall be sent in the following manner:

a. By registered airmail return receipt requested and postage prepaid, or by courier or hand delivery;

b. By telefax, with a copy sent within three days thereafter by registered airmail.

13.6 All such notices, reports, statements and other communications shall be deemed to have been received:

a. If sent by registered, first-class airmail, upon delivery to the addressee and

b. If sent by courier or hand delivery, upon delivery to the addressee.

c. If sent by telefax, upon confirmation obtained by the sender of the receipt of such telefax by the recipient.

13.7 Subject Headings. The subject headings of this Agreement are included for purposes of convenience only and shall not affect the construction or interpretation of any of its provisions.

IN WITNESS HEREOF, the parties have caused this Agreement to be executed by their duly authorized officers.

Quantum Corporation
By:
Title: Jon Gacek, EVP, CFO
Date: 2/8/2008

Executed in accordance with section 127
of the *Corporations Act 2001* by
Rocksoft Pty Limited:

_____          _____
Director Signature                 Director/Secretary Signature
Jon Gacek                          Shawn Hall
Print Name                         Print Name

Date: 2/8/2008